# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| NIKI AND DARREN | ) | |
| IRREVOCABLE TRUST | ) | C.A. No. 2019-0302-BWD |
| AND THE N AND D DELAWARE | ) | |
| IRREVOCABLE TRUST | ) | |

## MEMORANDUM OPINION

Date Submitted: November 10, 2025
Date Decided: November 19, 2025

Jon E. Abramczyk, Todd A. Flubacher, and Matthew R. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; *Attorneys for Petitioner Comerica Bank & Trust, N.A.*

Thomas A. Uebler and Sarah P. Kaboly, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, DE; *Attorneys for Respondent Niki Tesak.*

W. Donald Sparks, II, Chad M. Shandler, and Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; *Attorneys for Respondent Darren Rushin.*

William M. Kelleher, Phillip A. Giordano, and Madeline R. Silverman, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, DE; *Attorneys for Respondent Ildiko Juhasz de Tesak.*

**DAVID, V.C.**

The parties in this action, Claudia Elena Tesak ("Niki") and Darren J. Rushin ("Darren"),[1] were married in 1997 and divorced in 2018. During the marriage, Niki's mother, Ildiko Juhasz de Tesak ("Ildiko"), settled a substantial irrevocable trust to provide for herself, Niki, Darren, and their children. Upon Ildiko's death, that trust would fund two successor trusts, one for the benefit of Niki, funded with fifty-five percent of the corpus, and one in favor of Darren, funded with the remainder.

Darren, dissatisfied that the trust corpus would not fund a successor trust for him until Ildiko's death, retained counsel to change the trust to provide that if Niki and Darren divorced, the trust corpus would immediately be divided into two equal shares and administered as separate trusts. To accomplish that purpose, Darren's counsel proposed decanting the corpus of the initial trust into a new trust under 12 *Del. C.* § 3528. Darren's counsel warned him that the initial irrevocable trust may not permit Ildiko to distribute the trust's principal, but Darren proceeded with the decanting anyway, applying pressure to Niki and Ildiko to get it done.

After Niki and Darren initiated divorce proceedings, Ildiko's counsel concluded that the decanting was invalid under Delaware law. This lawsuit resulted, and in July 2024, following a three-day trial, Vice Chancellor Glasscock issued a

---

[1] I follow the practice of counsel and refer to the litigants by first name or preferred name for the sake of clarity; no disrespect or familiarity is intended.

post-trial memorandum opinion (the "Memorandum Opinion") concluding that under the terms of the initial trust, Ildiko did not retain the power to invade the principal and therefore was not entitled to decant it, such that the decanting was invalid and a "null act" under Delaware law.

This memorandum opinion addresses two sets of remaining issues. First, at trial, Darren asserted counterclaims and crossclaims for breach of fiduciary duty against the trusts' corporate trustee, Comerica Bank & Trust N.A. ("Comerica"), and Ildiko; civil conspiracy against Comerica, Ildiko, and Niki; and aiding and abetting breach of fiduciary duty against Ildiko. After reviewing the trial record in its entirety, I find that Darren's conduct in advocating and facilitating the decanting precludes him from asserting an equitable claim challenging, or seeking equitable relief in connection with, the decanting. In equity, Darren cannot seek relief from individuals who carried out his own wishes. Darren's counterclaims and crossclaims are therefore dismissed.

Second, the Memorandum Opinion concluded that the assets purportedly transferred through the invalid decanting should be deemed never to have left the initial trust, but left open the issue of how, as a practical matter, assets should be divided between the initial trust and the new trust. For reasons explained below, the parties will take targeted discovery to trace trust assets consistent with Section 202 of the Restatement (Second) of Trusts.

# I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from Vice Chancellor Glasscock's July 24, 2024 post-trial Memorandum Opinion and additional evidence presented at a three-day trial held on December 4 through December 6, 2023.[2]

## A.    The Parties, The 2012 Trust, And The 2014 Trust

As detailed in the Memorandum Opinion, Niki and Darren married in El Salvador in 1997. *In re Niki and Darren Irrevocable Tr. and the N and D Delaware Irrevocable Tr.*, 2024 WL 3515556, at *3 (Del. Ch. July 24, 2024) [hereinafter *Niki and Darren II*].  In 2012, Niki's mother, Ildiko Juhasz de Tesak ("Ildiko"), settled an irrevocable trust under the laws of California to provide for Niki, Darren, Niki and Darren's two children, and herself (the "2012 Trust"). *Id.*  The 2012 Trust made Ildiko the life beneficiary, able to request the income but not to invade the principal. *Id.* at *1.  It further provided that, upon Ildiko's death, the trust corpus would fund two successor trusts, one for the benefit of Niki (funded with fifty-five percent of the corpus) and one in favor of Darren (funded with the remainder). *Id.*  Upon their deaths, the 2012 Trust would be distributed in equal shares to Niki and Darren's children in successor trusts. *Id.*  The 2012 Trust was funded with Ildiko's interest in

---

[2] The Stipulation and Pre-Trial Order is cited as "PTO ¶ __".  Dkt 284.  Trial testimony is cited as "Tr. (Witness) at __".  Dkts. 292–94.  Joint trial exhibits are cited as "JX __".  Dkt. 275.

Global Infinity, Inc. ("Global Infinity"), an investment company that holds various securities, and Hacienda 2-503 LLC ("Hacienda"), which owns a condominium in Mexico. *Id.* at *3.

### B.  Darren Engages Counsel To Modify The 2012 Trust.

Sometime after the 2012 Trust was executed, Darren became dissatisfied with its terms. *Id.* at *4. Specifically, under the 2012 Trust, the trust corpus would not fund a successor trust for Darren until Ildiko's death. *Id.* Darren wanted a provision, instead, specifying that if Niki and Darren divorced, the trust corpus would be divided into two equal shares and administered as separate trusts (the "Divorce Provision"). *Id.* at *3–4.

In March 2014, Darren retained an attorney, Patrick Martin of the law firm Procopio, Cory, Hargreaves & Savitch LLP ("Procopio"), to prepare a new trust organized under the laws of Delaware to include the Divorce Provision and also to modify the division of assets such that, instead of Niki receiving fifty-five percent and Darren receiving forty-five percent of the corpus, Niki and Darren would each receive fifty percent of the corpus in trust (the "2014 Trust"). *Id.* at *4.

On June 4, Darren met with Martin and other advisors at Procopio's San Diego offices, without Ildiko or Niki, and directed Procopio to draft the 2014 Trust. *Id.* Procopio did as Darren instructed, preparing documents to (a) transfer the situs of the 2012 Trust from California to Delaware; (b) appoint Comerica as co-trustee of

4

the 2012 Trust; (c) establish the 2014 Trust with Comerica as sole trustee; and (d) appoint principal and income of the 2012 Trust to Comerica as trustee of the 2014 Trust under 12 *Del. C.* § 3528. *Id.*

### C.    The Decanting

To transfer assets from the 2012 Trust to the 2014 Trust, "Martin chose to use the decanting procedure in 12 *Del. C.* § 3528, which he understood allowed a trustee to decant trust assets to a new trust 'when the trustee has the power to distribute principal.'" *Id.* (citation omitted).  However, Martin realized that the 2012 Trust did not grant Ildiko, the settlor, the power to distribute principal during her lifetime.  *Id.* Martin relayed this information to Darren in an email on December 10, 2014.  *Id.*[3] But Darren claims that he relied on Martin to ensure that the Decanting was valid and did not fully understand the provisions of the 2014 Trust.[4]  Two days later, Darren forwarded Martin's December 10 email to Ildiko's financial advisor, Robert Brower, but not to Ildiko or her attorneys.[5]  Procopio finalized the 2014 Trust and sent copies for execution to Niki on December 19, so that Niki could bring the

---

[3] JX 26 at 1–2.

[4] Tr. (Darren) at 477:16–478:24; *id.* at 481:2–24 ("I wouldn't know how to explain it myself.").

[5] *Id.* at 479:3–480:24; JX 28 at 1 ("Niki should seek Miguel's counsel on the documents prepared for her signature.").

documents to Ildiko in El Salvador over the holidays. *Niki and Darren II*, 2024 WL 3515556, at \*5.

On Christmas Eve of 2014, "Ildiko, in her capacity as trustee, moved the situs of administration of the 2012 Trust to Delaware, changed the governing law to Delaware, and appointed Comerica to be the co-trustee of the 2012 Trust." *Id.* That same day, Ildiko settled the 2014 Trust, appointing Comerica as the sole trustee. *Id.*

Ildiko and Comerica, as trustees of the 2012 Trust, then purported to decant the 2012 Trust corpus into the 2014 Trust (the "Decanting"). *Id.* Ildiko and Comerica executed a trustee resolution, purporting to appoint the 2012 Trust's ownership interests in Global Infinity and Hacienda to the 2014 Trust. *Id.* Ildiko, Niki, and Darren also signed acknowledgements and "statements of non-objection or consent" to the Decanting. *Id.*

On June 14, 2015, Comerica executed the 2014 Trust. *Id.*

### D. Niki And Darren Divorce, And Ildiko Learns That The Decanting Was Invalid.

Niki and Darren initiated divorce proceedings in 2018. *Id.* at \*6. In 2019, Ildiko engaged Delaware counsel to review the 2014 Trust. *Id.* Ildiko's counsel concluded that the Decanting was invalid under Delaware law, and so informed Comerica on February 15, 2019. *Id.* After consulting with counsel, Comerica also concluded that "the Decanting was invalid since [under the 2012 Trust] the Trustees lacked the power to distribute principal during Ildiko's lifetime, and the interests of

6

the remainder beneficiaries under the 2014 Trust were not substantially identical to their interests under the 2012 Trust." *Id.*

### E.    Procedural History

On April 22, 2019, Comerica initiated this action through the filing of a Verified Petition for Instructions (the "Petition"), seeking "instructions from the Court as to whether the Decanting Transaction was invalid and, therefore, void ab initio and, if so, whether the income and principal of the [2012] Trust should be returned to the [2012] Trust *nunc pro tunc*."[6]

On June 2, 2020, Darren filed an answer to the Petition, as well as counterclaims and crossclaims (the "Counterclaims" and the "Crossclaims").[7] The Counterclaims and Crossclaims allege that (1) Comerica breached its fiduciary duties as trustee of the 2012 Trust and the 2014 Trust, (2) Ildiko breached her fiduciary duties as trustee of the 2012 Trust, (3) Ildiko aided and abetted Comerica's breaches of fiduciary duty, and (4) Ildiko and Comerica participated in a civil conspiracy to "undo" the Decanting and deprive Darren of the benefits of the 2014 Trust.[8]

---

[6] Verified Pet. for Instrs. ¶ 55, Dkt. 1.

[7] Darren J. Rushin's Am. Answer to the Verified Pet. for Instrs. and Verified Am. Countercls. and Cross-cls., Dkt. 95.

[8] *Id.* ¶¶ 40–68. In Counts VI and VII, Darren also seeks to remove Comerica as trustee of both the 2012 Trust and the 2014 Trust. *Id.* ¶¶ 69–75.

7

The parties cross-moved for judgment on the pleadings.[9]  On February 4, 2021, Vice Chancellor Glasscock, to whom this action was assigned, issued a memorandum opinion denying Comerica and Ildiko's motion for judgment on the pleadings, concluding that the doctrine of unclean hands prevented Comerica and Ildiko from seeking to invalidate transactions that they approved:

> This case was briefed around one central issue: whether the assets of the [2012] Trust were validly decanted into the [2014] Trust.  Both trusts were settled by the same person, Ildiko, who is also a beneficiary of both trusts, and who was the initial sole trustee of the [2012] Trust.  Ildiko—with Petitioner Comerica, who is a trustee of both the [2012] Trust and the [2014] Trust—now, four years later, seeks to have the purported decanting declared void as noncompliant with the Decanting Statute—a decanting that Ildiko and Comerica executed themselves, as the trustees of the [2012] Trust. . . .
>
> As the trustee of the [2012] Trust, Ildiko decided to place its corpus into that [2014] Trust.  Ildiko then enjoyed the benefits of being a beneficiary of the [2014] Trust, including, presumably, distributions from the [2014] Trust, for several years.  Only when conditions made her regret her prior decanting decision did she and Comerica decide to attack the legitimacy of their own actions in funding the [2014] Trust.  To invoke equity as a remedy for those actions is, I find, itself offensive to equity.  Having previously acted in a fiduciary capacity to settle and fund a trust through what she now asserts were illegal means, Ildiko cannot invoke equity for relief from that action, in her own self-interest . . . .

---

[9] Pet'r's Mot. for J. on the Pleadings, Dkt. 81; Ildiko Juhasz de Tesak's Joinder in Pet'r's Mot. for J. on the Pleadings, Dkt. 86; Niki's Joinder to Comerica's Mot. for J. on the Pleadings, Dkt. 87; Resp't Darren James Rushin's Cross-Mot. for J. on the Pleadings, Dkt. 105.

*In re Niki and Darren Irrevocable Tr. and the N and D Delaware Irrevocable Tr.*, 2020 WL 8421676, at *3 (Del. Ch. Feb. 4, 2021) [hereinafter *Niki and Darren I*].

After the Court denied Comerica and Ildiko's motion for judgment on the pleadings, Niki filed her own counterclaim and crossclaim, seeking a declaration that the Decanting was invalid and that the decanted assets must be returned to the 2012 Trust.[10] Darren then asserted a crossclaim for conspiracy against Niki and sought a declaration instructing Comerica to distribute any non-decanted assets in accordance with the terms of the 2014 Trust.[11]

Niki moved to dismiss the Counterclaims on March 16, 2022.[12] After briefing and argument, Vice Chancellor Glasscock deferred ruling on the motion and ordered mandatory mediation under Court of Chancery Rule 174(c).[13] Mediation was unsuccessful, however, and on June 26, 2023, Darren moved for partial summary judgment on certain of the Counterclaims.[14] On July 12, the Court deferred decision on the remaining dispositive motions until after trial.[15]

---

[10] Niki's Am. Answer to Verified Pet. for Instrs., Countercl., and Cross-cl., Dkt. 164.

[11] Darren J. Rushin's Answer to Niki's Verified Countercl. and Cross-cl. and Verified Am. Countercl. and Cross-cl., Dkt. 184.

[12] Niki's Mot. to Dismiss Darren Rushin's Am. Countercl., Dkt. 185.

[13] Tr. of 7-7-2022 Oral Arg. and Rulings of the Ct. on Defs.' Mot. to Dismiss at 30:6–32:12, Dkt. 216; Order, Dkt. 219.

[14] Resp't Darren Rushin's Mot. for Partial Summ. J., Dkt. 258.

[15] Letter to Counsel, Dkt. 266.

**F.     The Post-Trial Memorandum Opinion**

The Court held a three-day trial from December 4 through December 6, 2023[16] and heard post-trial oral argument on March 20, 2024.[17]  On July 24, Vice Chancellor Glasscock issued the Memorandum Opinion, finding that "Ildiko did not retain the power to invade the principal of the 2012 Trust, and thus was not entitled under the statute to decant that principal," such that the Decanting was invalid under Delaware law.  *Niki and Darren II*, 2024 WL 3515556, at *11.

The Memorandum Opinion concluded that "the attempted [D]ecanting of the assets held by the 2012 Trust into the 2014 Trust was a null act, and that equity does not preserve the funding of the 2014 Trust with these assets."  *Id.* at *13.  The Court further explained that, "[b]ecause the purported Decanting is a nullity, the assets that theoretically flowed thereby from the 2012 Trust to the 2014 Trust should be viewed as never leaving the 2012 Trust."  *Id.* at *11.

On December 31, the parties filed a joint letter identifying issues remaining for resolution following the Memorandum Opinion.[18]  This action was reassigned to me on January 8, 2025.[19]  Thereafter, the parties filed supplemental briefing on the

---

[16] Dkt. 291.

[17] Dkt. 316.

[18] Letter to the Court, Dkt. 324.

[19] Dkt. 325.

remaining issues.[20] The Court heard oral argument on October 1,[21] and the parties submitted a Joint Schedule of Evidence on November 10.[22]

## II.   ANALYSIS

In supplemental briefing, the parties identify two sets of issues that remain for resolution.[23] First, Darren's Counterclaims and Crossclaims against Comerica, Ildiko, and Niki remain outstanding. Second, the parties disagree on how to implement the Court's post-trial ruling that, given the invalidity of the Decanting, the assets that flowed from the 2012 Trust to the 2014 Trust should be viewed as never leaving the 2012 Trust.

### A.   Darren's Counterclaims And Crossclaims Are Dismissed.

The Memorandum Opinion did not resolve Darren's Counterclaims and Crossclaims for (1) breach of fiduciary duty against Comerica and Ildiko, (2) civil

---

[20] On April 8, Niki and Darren submitted opening post-trial supplemental briefs. Niki Tesak's Opening Post-Trial Suppl., Dkt. 336; Darren Rushin's Opening Suppl. Post-Trial Br., Dkt. 337. On May 8, Ildiko, Comerica, Niki, and Darren submitted answering post-trial supplemental briefs. Ildiko Juhasz de Tesak's Answering Suppl. Post-Trial Br., Dkt. 341; Pet'r/Countercl.-Def. Comerica Bank & Tr., N.A.'s Answering Suppl. Post-Trial Br., Dkt. 343; Niki Tesak's Answering Post-Trial Suppl., Dkt. 344; Darren Rushin's Answering Suppl. Post-Trial Br., Dkt. 345. On June 3, Niki and Darren submitted reply post-trial supplemental briefs. Niki Tesak's Reply Post-Trial Suppl., Dkt. 353; Darren Rushin's Reply Suppl. Post-Trial Br., Dkt. 354.

[21] Dkt. 358.

[22] Dkt. 360.

[23] The parties also seek awards of fees and costs. As the Court previously ruled, those requests are deferred until the conclusion of this action.

11

conspiracy against Comerica, Ildiko, and Niki, or (3) aiding and abetting breach of fiduciary duty against Ildiko.[24] Darren argues that Comerica and Ildiko breached their fiduciary duties as co-trustees of the 2012 Trust "by appointing assets from the 2012 Trust to the 2014 Trust without having the requisite authority under the trust instrument";[25] Comerica, Ildiko, and Niki engaged in a civil conspiracy, predicated on a breach of Comerica's fiduciary duty of impartiality,[26] "to prevent Darren from receiving a distribution from the 2014 Trust upon his divorce from Niki";[27] and Ildiko aided and abetted Comerica's breach of fiduciary duty in its capacity as trustee of the 2014 Trust when she "initiated, spearheaded, and funded" Comerica's efforts to prevent Darren from receiving a distribution from the 2014 Trust.[28]

The equitable doctrine of unclean hands precludes Darren from recovering on these equitable claims, all premised on fiduciary duties purportedly owed to Darren. As Vice Chancellor Glasscock explained in his February 4, 2021 memorandum opinion, "[i]t is a maxim of equity . . . that a wrongdoer with respect to the transaction

---

[24] Dkt. 324.

[25] Darren Rushin's Opening Suppl. Post-Trial Br. at 11.

[26] Darren argues that Comerica breached its fiduciary duties, including the duty of impartiality, by filing the Petition for Instructions and advocating for a position adverse to Darren's best interests. Darren Rushin's Reply Suppl. Post-Trial Br. at 10. Further, Darren argues that "Comerica intentionally kept Darren uninformed about its plans to invalidate the Decanting as it was plotting its litigation strategy with Ildiko." *Id.*

[27] Darren Rushin's Opening Suppl. Post-Trial Br. at 24.

[28] *Id.*

12

at issue may not invoke equitable relief." *Niki and Darren I*, 2020 WL 8421676, at *5. The doctrine of unclean hands "is aimed at providing courts of equity with a shield from the potentially entangling misdeeds of the litigants in any given case." *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998). The defense does not belong to the defendant, but to the Court itself. *Niki and Darren I*, 2020 WL 8421676, at *5. "[W]here the litigant's own acts offend the very sense of equity to which he appeals," the Court may refuse to consider requests for relief. *Nakahara*, 718 A.2d at 522. "To do otherwise would involve the court itself in the inequitable acts that the petitioner seeks to vindicate." *Niki and Darren I*, 2020 WL 8421676, at *5.

For the doctrine to apply, "the inequitable conduct must have an 'immediate and necessary' relation to the claims under which relief is sought." *Nakahara*, 718 A.2d at 523 (quoting *Kousi v. Sugahara*, 1991 WL 248408, at *3 (Del. Ch. Nov. 21, 1991)). While litigants do not "'have [to] le[a]d blameless lives' as to other matters," they must "have acted fairly and without fraud or deceit as to the controversy in issue." *New Start Hldgs., LLC v. Zhou*, 2024 WL 4039440, at *15 (Del. Ch. Sep. 4, 2024) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15 (1945)). Inequitable conduct does not need to be "of such a nature as to be punishable as a crime or as to justify [any] legal proceedings," and "[a]ny willful act concerning the cause of action which . . . transgress[es] equitable

13

standards of conduct is sufficient cause for the invocation of the maxim." *Id.* (quoting *Precision Instrument Mfg.*, 324 U.S. at 815).

After reviewing the trial record in its entirety, I find that Darren's conduct in advocating and facilitating the Decanting precludes him from asserting an equitable claim challenging, or seeking equitable relief in connection with, the Decanting.

Darren seeks relief for a scheme that *he* orchestrated and then sought to defend. It was Darren who prompted the Decanting because he was dissatisfied that the 2012 Trust did not contain a Divorce Provision. He therefore retained counsel at Procopio to prepare the 2014 Trust, directing Procopio to include provisions that "were largely in favor of Darren, at the expense of Niki and Ildiko," and then to decant the 2012 Trust's assets into the 2014 Trust. *Niki and Darren II*, 2024 WL 3515556, at *1 (footnote omitted) ("Niki and Darren participated in each discussion with the attorneys concerning the creation of the trust, with Darren primarily leading these discussions."); *id.* at *12 ("[I]t was counsel acting primarily at the behest of Darren who proposed the Decanting.").[29] Martin advised Darren that the 2012 Trust

_____

[29] *See also* Tr. (Niki) at 169:20–23 ("Q. Is there any other reason why you went along with the idea of the new trust in 2014? A. No. I was simply pushed into it again. Badgered into it. He doesn't give up. Ever."); *id.* at 172:17–24 ("Darren just handled the whole thing. I wasn't even in agreement with this trust, so he just was handling it all because it was his thing. And I did not get involved because I had already thrown in the towel."); *id.* at 184:2–20 (testifying that Niki agreed to sign the 2014 Trust at Darren's insistence); *id.* at 254:21–

14

may not permit Ildiko to distribute principal,[30] but he proceeded with the Decanting anyway,[31] applying pressure to get it done.[32]  Ildiko had her own attorneys, but Darren did not send the documents to them, opting instead to address the 2014 Trust documents with Ildiko personally over the holidays, despite Darren's inability to

---

24 ("Simply put, I signed that document because Darren put it in front of me. That's all it is. I should not have signed that document. He put it in front of me, said I had to sign it, [so I] signed it.").

[30] Because Darren consented to the Decanting, 12 *Del. C.* § 3588 also bars him from bringing claims against Comerica and Ildiko.  Under Section 3588(a), Darren's consent precludes relief unless it "was induced by the improper conduct of the trustee" or "[a]t the time of the consent . . . [Darren] did not know of . . . [his] rights; or . . . [m]aterial facts the trustee knew or should have known with the exercise of reasonable inquiry."  12 *Del. C.* § 3588(a).  Darren was not induced by improper conduct to consent to the Decanting, and at the time he consented, he knew that the 2012 Trust did not specify that Ildiko could invade the principal.  Therefore, Darren knew of the same material facts that Comerica or Ildiko knew or should have known, and his consent bars him from bringing claims.

[31]  Darren and Procopio knew that Ildiko was represented by counsel, but instead of sending execution copies of the 2014 Trust to her lawyer, Miguel Leff, Procopio sent them to Niki to hand deliver to her mother in El Salvador on Christmas Eve.  *See* JX 191 at 1 ("Please have your Mom sign it as we [are] hav[ing] closing on the 28th of May for Hacienda."); JX 52 at 2 ("We were not given the courtesy to review the Trust prepared by Procopio and signed by Mrs. Tesak.  . . .  It has to be clear to all parties that Procopio represents Darren Rushin and in the course of such representation drafted a Trust signed by Mrs. Tesak without Mrs. Tesak having the benefit of consulting her counsel.").

[32] *See supra* note 29; Tr. (Niki) at 157:8–24 ("I felt very coerced. I felt very between a rock and a hard place. I did not want to do this. I did not."); *id.* at 160:2–8 ("Q. How did you and Darren come to agreement on the 55/45 split?  A. I just finally gave in to him."); *id.* at 160:9–19 ("Q. Why did you go along with the 55/45?  A. Because he's very, very—doesn't let up.").

explain the contents. Ildiko settled the 2014 Trust on Christmas Eve because Darren asked her to and because she trusted him.[33]

Moreover, when challenged in litigation, Darren repeatedly argued that the Decanting was *valid*—a position inconsistent with the claims he now raises. Darren cannot now be heard to argue that Ildiko and Comerica breached their fiduciary duties to him by approving a transaction *at his behest*.[34] Nor can Darren be heard to argue that Comerica breached its fiduciary duties to him by seeking instructions that the Decanting for which he advocated was invalid. Darren's assertion of equitable claims to recover from purported harms he brought upon himself is itself offensive to equity.

Darren responds that he was entitled to rely on the advice of counsel that the Decanting was valid.[35] That argument misses the point by largely ignoring that it

---

[33] Tr. (Ildiko) at 18:4–5 ("I trusted him and I trusted the lawyers . . . ."); *id.* at 18:20–22 ("I didn't read it, but because I trusted him . . . that's really [why] I signed it."); *id.* at 43:9–13 ("Q. You signed all of the 2014 trust documents without ever having read any of those documents; correct? A. Yes. Because I trusted Procopio and I trusted Darren. I did."); *see also* JX 35 at 1 ("Darren . . . is gathering Ildiko's signatures on [Procopio's] documents today in El Salvador.").

[34] Unlike Niki's consent to the Decanting, which Vice Chancellor Glasscock held was insufficient to constitute unclean hands, Darren arranged the very plan from which he now seeks relief.

[35] Darren Rushin's Opening Suppl. Post-Trial Br. at 20.

was *Darren* who devised the plan to create and fund the 2014 Trust for his own benefit, by including the Divorce Provision.

In equity, Darren cannot seek relief from individuals who merely carried out his own wishes.[36] Darren's Counterclaims and Crossclaims are therefore dismissed.[37]

## B. Implementing The Memorandum Opinion's Ruling That Trust Assets Should Be Viewed As Never Leaving The 2012 Trust

### 1. Which Assets Must Be Returned To The 2012 Trust?

The Memorandum Opinion concluded that because the Decanting is invalid, "the assets purportedly decanted should be deemed never to have left the 2012 Trust"; "the assets reposed in the 2012 Trust at the time of the ineffective decanting remain in the 2012 Trust"; and "the assets that theoretically flowed thereby from the 2012 Trust to the 2014 Trust should be viewed as never leaving the 2012 Trust." *Niki and Darren II*, 2024 WL 3515556, at *2, *11.

---

[36] The facts present no countervailing reason against applying the doctrine of unclean hands. The Court previously found that the doctrine prevented Ildiko and Comerica from seeking to invalidate actions that they approved, but Ildiko's and Comerica's unclean hands do not absolve Darren for his own role in the scheme. Again, "[t]he application of this defense is to protect the Court, not Defendants." *New Start Hldgs.*, 2024 WL 4039440, at *17.

[37] As a result, Darren's request for equitable relief in the form of a resulting trust and restrictions on Ildiko's ability to receive distributions from the assets residing in the 2012 Trust is denied. Darren Rushin's Opening Suppl. Post-Trial Br. at 27–31. For the same reasons, Darren's request to remove Comerica as trustee of the 2012 Trust and the 2014 Trust is denied.

The parties now dispute how, as a practical matter, assets currently in the 2014 Trust should be divided between the 2012 Trust and the 2014 Trust. When the Decanting took place in 2015, the 2012 Trust contained two assets: (1) membership interests in Global Infinity and (2) membership interests in Hacienda. The parties agree that those assets should be returned to the 2012 Trust.

After the Decanting, the 2014 Trust acquired three new assets: (1) Meow Holdings Corp. ("Meow"), a Marshall Islands corporation that owns a yacht; (2) Villa Carisa Corp. ("Carisa"), a Marshall Islands corporation that owns a property in St. Maarten; and (3) Playacar Ventures LLC ("Playacar"), a limited liability company that owns a majority interest in Casas Playacar Sol y Alta Vista SRL de CV, a Mexican corporation that owns two large residential properties in Playa del Carmen, Mexico.[38] Darren argues that Meow, Carisa, and Playacar must remain in the 2014 Trust because they "were *never* held in the 2012 Trust."[39] But Niki contends that Global Infinity assets were used to acquire or maintain Meow,

[38] PTO ¶ 35; *see* Niki Tesak's Opening Post-Trial Suppl. at 4–5.

[39] Darren Rushin's Answering Suppl. Post-Trial Br. at 2 (emphasis added).

Carisa, and Playacar.[40] Niki argues that the Court should engage in "asset tracing" to make the 2012 Trust whole.[41]

At common law, a trustee who breaches her duties by usurping trust assets may be liable to the trust beneficiaries not only for the return of the trust property wrongfully taken, but also for any new property acquired with the trust assets:

> Where the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled at his option either to enforce a constructive trust of the property so acquired or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced.

Restatement (Second) of Trusts § 202(1) (1959). Stated differently, "where the trustee wrongfully . . . uses trust funds in the purchase of property," a beneficiary can reach the new property resulting from the disposition by following trust property into its product. *Id.* § 202(1) cmt. a. A trustee also may be liable for successive transactions "with respect to property subsequently acquired through the disposition of the property so first acquired," even where there are many successive transactions, "so long as it is shown that the property ultimately held by the trustee was acquired

---

[40] For example, Global Infinity expended funds to employ a yacht captain and to pay maintenance costs of the yacht and real estate. *See* Niki Tesak's Opening Post-Trial Suppl. at 6.

[41] *Id.* at 3–4.

through the wrongful disposition of the trust property or its product." *Id.* § 202(1) cmt. b.

Asset tracing is also appropriate where a trustee "acquires property from the wrongful use of trust property." *Id.* § 202(1) cmt. e. If the trustee wrongfully uses trust property to further her own interests, "the beneficiary can impose a constructive trust or equitable lien upon the proceeds if he can trace them." *Id.* Similarly, where the trustee wrongfully uses trust funds to pay for improvements upon property owned by the trustee, "the beneficiary is entitled to an equitable lien upon the property." *Id.* § 202(1) cmt. f.

In short, at common law, one tool the Court has at its disposal for making beneficiaries whole after a trustee has breached its duties is to trace the assets wrongfully taken or used and to order their return or impose a constructive trust or equitable lien. That approach, I find, also provides a logical framework to make the beneficiaries of the 2012 Trust whole since the Decanting was deemed invalid. Under the facts of this case, no party should be permitted to profit from the invalid Decanting.

Darren argues that it would be "highly inefficient and burdensome" to reopen the record to trace trust assets.[42] But the procedural history in this case shows that

---

[42] Darren Rushin's Reply Suppl. Post-Trial Br. at 4.

the parties, including Darren, anticipated bifurcated proceedings on remedy.[43] The

parties will take targeted discovery to trace trust assets consistent with Section 202

of the Restatement and should consider whether to jointly engage an accountant to

assist them in doing so.

## 2. The No-Contest Provision Does Not Apply.

In supplemental briefing, Darren rehashes an argument, previously raised and

rejected, that this lawsuit triggered a "no-contest" clause (the "No-Contest

Provision") in the 2014 Trust.

Article 8.31 of the 2014 Trust provides:

> In the event any beneficiary under any trust created under this
> instrument, shall, singly or in conjunction with, any other person or
> persons, contest in any court the validity of this instrument, or seek to
> obtain an adjudication in any proceeding in any court that this
> instrument is void, or seek otherwise to void, nullify, or set aside this
> instrument, then the right of that person by this instrument shall be
> determined as if that person predeceased the execution of this
> instrument without descendants surviving.[44]

At a December 19, 2019 hearing, Vice Chancellor Glasscock ruled that the

No-Contest Provision does not apply to the facts of this case:

> [The No-Contest provision] provides that an action seeking to void,
> nullify, or set aside the trust instrument triggers forfeiture. *That, to my
> mind, clearly the trust petition does not do*. It does not seek to set aside,

---

[43] Indeed, in an October 4, 2023 letter to this Court, Darren "proposed that discovery and testimony from his [damages] expert be deferred until after the Court's rulings on liability." Letter to the Court, Dkt. 272.

[44] JX 95, Art. 8.31.

21

void, or nullify the [2014 Trust]. So the fact that, as a practical matter, it may, if certain factual developments turn out to be the case, and if certain choices of Delaware law or findings of Delaware law in a case of first impression come out in a certain way, have the effect of nullifying the trust instrument, that is insufficient, in my mind, to trigger forfeiture.[45]

The law of the case doctrine "is intended to prevent pernicious serial litigation of issues already decided in the matter at bar" and "applies to decisions rendered by a court that arise again later in the same court, in the same proceedings." *Sciabacucchi v. Malone*, 2021 WL 3662394, at *1, *4 (Del. Ch. Aug. 18, 2021) (quoting *Frederick-Conaway v. Baird*, 159 A.3d 285, 296 (Del. 2017)). Once a matter is decided, it generally will not be disturbed unless there is "a showing of clear error, injustice, or a change in circumstances to disregard the law of the case." *Id.* at *4. Darren has made no such showing here, and I therefore do not revisit the Court's prior rulings on this issue.[46]

## III. CONCLUSION

For the reasons explained above, Darren's Counterclaims and Crossclaims are DISMISSED. The parties are directed to meet and confer on a plan for targeted discovery in aid of asset tracing, as described above.

---

[45] Tr. of 12-19-2019 Oral Arg. and Rulings of the Ct. on Ildiko Juhasz de Tesak's Mot. for Safe Harbor Decl. Regarding Pet. for Instrs. and Claudia Elena Tesak de Rushin's Mot. for Declaratory J. at 32:9–21 (emphasis added), Dkt. 57.

[46] Even if the law of the case doctrine did not control, I agree with Vice Chancellor Glasscock that the No-Contest Provision does not apply for the reasons stated in his ruling.